**James D. HODGSON, Secretary of Labor, United States Department of Labor,**

v.

**WHEATON GLASS CO., a Corporation, Appellant.**

**No. 19558.**

United States Court of Appeals, Third Circuit.

Argued June 4, 1971.

Decided July 22, 1971.

---

8. *Cf.* N.L.R.B. v. Southern Cal.Dist. Council of Laborers, 443 F.2d 220 (9th Cir. 1971).

Bruce W. Kauffman, Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa. (David Pittinsky, Carl Hanzelik, Philadelphia, Pa., Joseph B. Kauffman, Atlantic City, N. J., Marcus Manoff, Philadelphia, Pa., on the brief), for appellant.

Bessie Margolin, Associate Sol., U. S. Dept. of Labor, Washington, D. C. (Peter G. Nash, Sol. of Labor, Carin Ann Clauss, Leroy M. Jahn, Attys., U. S. Dept. of Labor, Francis V. LaRuffa, Regional Sol., Washington, D. C., on the brief), for appellee.

Albert K. Plone, Plone, Tomar, Parks & ·Seliger, Camden, N. J., for amicus curiae Glass Bottle Blowers Association of the U. S. and Canada, AFL–CIO.

Before SEITZ, Chief Judge, and AL-DISERT and GIBBONS, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

This case is before us for the second time. The complaint, filed by the Secre-

tary of Labor on January 18, 1966, charged the defendant with violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) (1964), an amendment to the Fair Labor Standards Act of 1938. 29 U.S.C. § 201 (1964) et seq. The initial decision of the district court was a judgment in favor of the defendant. Wirtz v. Wheaton Glass Co., 284 F.Supp. 23 (D.N. J.1968). This court reversed and remanded the case to the district court with direction to enter an appropriate judgment in favor of the plaintiff. Shultz v. Wheaton Glass Co., 421 F.2d 259 (3rd Cir. 1970), cert. denied, 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). The district court then entered a final judgment enjoining future compliance by the defendant with the Equal Pay Act by equalizing the wage rates of its female selector-packer employees with those of its male selector-packer employees. The judgment also directed the defendant to determine the amounts withheld from the female selector-packers from March 1, 1965, the effective date of the Equal Pay Act, to the date the pay rates are equalized, and to pay over these amounts to the employees or their personal representatives with interest at six percent per annum. The judgment provides that any sums not paid over to employees or their personal representatives shall be covered into the Treasury of the United States as miscellaneous receipts. Hodgson v. Wheaton Glass Co., Civ. No. 53–66 (D. N.J., Nov. 9, 1970). Defendant appeals from those parts of the judgment directing the payment of back pay and interest either to the employees or to the Treasury of the United States. It relies on the novel question proviso in Section 16(c) of the Fair Labor Standards Act, 29 U.S.C. § 216(c) (1964), which in relevant part provides:

> "When a written request is filed by any employee with the Secretary of Labor claiming unpaid minimum wages or unpaid overtime compensation under section 206 or section 207 of this title, the Secretary of Labor may bring an action in any court of competent jurisdiction to recover the amount of such claim: *Provided,* That this authority to sue shall not be used by the Secretary of Labor in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary of Labor if it does involve any issue of law not so finally settled."

Defendant contends that issues of law finally settled in this case were, at least until the Supreme Court denied a petition for certiorari to review our earlier decision, issues of law not finally settled.

The plaintiff contends, first, that the issues involved in the case were factual rather than legal or if legal not novel, and second, that the novel question proviso has no application to suits by the Secretary brought under § 17 of the Act. 29 U.S.C. § 217 (1964). These contentions may be considered separately, since if the plaintiff is correct on either the judgment of the district court must be affirmed. The resolution of the issues posed by either contention, however, requires an understanding of the complex history by which §§ 16(c) and 17 reached their present form.

Prior to 1949 the Fair Labor Standards Act provided that employees could bring suit for recovery of unpaid minimum wages or overtime compensation plus liquidated damages. That right still exists. 29 U.S.C. § 216(b) (1964). Prior to 1949, § 17 of the Act provided that the district courts had jurisdiction to restrain future violations of the Act. There was no statutory provision whereby the Secretary could bring suit on behalf of the employees to recover back wages. By administratively developed practice the Secretary,[1] after investigation, often supervised the collection and payment of agreed upon settlements. That procedure for encouraging voluntary payments in settlement was largely ineffective, however, because the employer, even though he paid voluntarily, re-

---

1. Prior to 1950 these duties were performed by the Wage and Hour Administrator.

mained liable, if the employee sued, for liquidated damages and attorneys' fees. Rigopoulos v. Kervan, 140 F.2d 506 (2nd Cir. 1943). Probably recognizing that employee suits would be rare and voluntary payment after investigation unlikely, some courts developed a rule that in a suit by the Secretary to enjoin wrongful discharge or underpayment violations a court of equity, in order to afford complete relief, could issue an injunction requiring the payment of back wages. McComb v. Frank Scerbo & Sons, Inc., 177 F.2d 137 (2nd Cir. 1949) (underpayment); Walling v. O'Grady, 146 F.2d 422 (2nd Cir. 1944) (wrongful discharge). The evolution of what became known as the *Scerbo* type remedy suggested certain problems. In the Portal-to-Portal Act of 1947, 29 U.S.C. § 255 (1964), as amended, 29 U.S.C. § 255 (Supp. III, 1968), Congress had imposed on Fair Labor Standards Act claims a two year statute of limitations. Could the Secretary's equity suit circumvent this limitation? Also, what effect did the Secretary's equity recovery have upon a later action at law by the employees for liquidated damages? *See* Rigopoulos v. Kervan, *supra*; 63 Harv.L.Rev. 1078, 1079 (1950). Acting on these concerns, Congress in the Fair Labor Standards Act of 1949, Act of Oct. 26, 1949, ch. 736, § 14, 63 Stat. 919, amended both § 16 and § 17. See Senate Report No. 640, Conference Report No. 1453, 2 U.S.Code Cong.Serv. 81st Cong., 1st Sess. 1949, pp. 2247, 2273.

The 1949 Act added the present § 16 (c), which did the following:

(1) It gave statutory recognition to the administrative practice of supervision by the Wage and Hour Administrator of payment of unpaid minimum wages and overtime compensation, and it overcame the *Rigopoulos* problem by providing that an agreement by an employee to accept such payment constituted a waiver by him of any claim under § 16(b).

(2) It gave partial statutory recognition to the *Scerbo* remedy by providing that the Administrator could, at the request of any employee, bring suit for back wages.

(3) It made clear that the Portal-to-Portal Act statute of limitations was applicable to such a suit by the Administrator.

(4) It introduced the novel question proviso quoted hereinabove.

The novel question proviso was not in the original Senate Bill, S. 653. That bill proposed a somewhat broader recognition of the *Scerbo* remedy, providing that the Administrator could sue for back wages not only at the request of, but also with the consent of the employees. In conference the consent provision was omitted and the novel question proviso added. The Conference Report says with respect to the proviso:

"The conference agreement adds a proviso to prevent the Administrator from using the authority granted in this section to bring test cases involving new or novel questions of law. The Administrator may use his authority under this section to bring a suit for an employee only in cases where the law has been settled finally by the courts. The proviso is not intended, however, to preclude the Administrator from instituting suits or the court from taking jurisdiction on the basis of existing legal precedents under the Fair Labor Standards Act of 1938 as amended except to the extent that they are changed by the amendments made by the conference agreement." Conference Report No. 1453, *supra* at 2272.

In the original 1949 Senate and House Bills no substantial change in § 17 was proposed. In conference, however, a proviso was added to § 17, which, as enacted, read:

"The district courts * * * shall have jurisdiction, for cause shown, to restrain violations of section 15: *Provided*, That no court shall have jurisdiction, in any action brought by the Administrator to restrain such violations, to order the payment to employees of unpaid minimum wages, or unpaid overtime compensation or an

additional equal amount as liquidated damages in such action." Act of Oct. 26, 1949, Ch. 736, § 15, 63 Stat. 919.

The Conference Report says with respect to § 17:

"The conference agreement adopts the Senate version with a proviso to the effect that no court shall have jurisdiction, in any action brought by the Administrator to restrain violations of section 15, to order payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages. This proviso has been inserted in section 17 of the act in view of the provision of the conference agreement contained in section 16(c) of the act which authorizes the Administrator in certain cases to bring suits for damages for unpaid minimum wages and overtime compensation owing to employees at the written request of such employees. Under the conference agreement the proviso does not preclude the Administrator from joining in a single complaint causes of action arising under section 16(c) and section 17. Nor is it intended that if the Administrator brings an action under section 16(c) he is thereby precluded from bringing an action under section 17 to restrain violations of the act. Similarly, the bringing of an injunction action under section 17 will not preclude the Administrator from also bringing in an appropriate case an action under section 16(c) to collect unpaid minimum wages or overtime compensation owing to employees under the provisions of the law. Nor is the provision intended in any way to affect the court's authority in contempt proceedings for enforcement of injunctions issued under section 17 for violations occurring subsequent to the issuance of such injunctions. The provision, however, will have the effect of reversing such decisions as McComb v. Scerbo ((C.C.A.2) 17 Labor Cases No. 65,297), in which the court included a restitution order in an injunction decree granted under section

17." Conference Report No. 1453, *supra* at 2273.

It seems quite clear that the combined enactment of § 16(c) and the § 17 proviso was intended to limit the Administrator's authority to sue for back wages to that granted in § 16(c), and to subject any such suit to the statute of limitations and the res adjudicata effect specified for § 16(c) suits.

The Supreme Court chose to read the § 17 proviso narrowly. In Mitchell v. Robert DeMario Jewelry, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960), it held that although § 17 had overruled McComb v. Scerbo, *supra*, it had not overruled Walling v. O'Grady, *supra*. The Court said:

"Rather than expressing a general repudiation of equitable jurisdiction to order reimbursement to effectuate the policies of the Act, we think that the 1949 amendments evidence a purpose to make only limited modifications in the nature and extent of the Secretary's power to obtain reimbursement of unpaid compensation. This being so, there is no warrant for construing the § 17 proviso as reaching beyond suits to enjoin violations of the minimum wage and overtime provisions of the statute, so as wholly to eradicate any jurisdiction to restore wage losses to employees discharged in violation of § 15(a) (3)." (footnote omitted) 361 U.S. at 295–296, 80 S.Ct. at 337.

Thus the effect of Mitchell v. Robert DeMario Jewelry, *supra*, was to restore, or rather to continue the Walling v. O'Grady remedy in suits to enjoin wrongful discharge, but to recognize that suits for unpaid wages or overtime compensation could be brought by the Secretary only pursuant to § 16(c). Suits for unpaid wages or overtime remained subject to the novel question proviso. Mitchell v. Robert DeMario Jewelry does not enlighten on what statute of limitations would be applicable to a back pay claim in a wrongful discharge suit under § 17. Since the wrongful discharge prohibited by § 15(a) (3) of the Act, 29 U.S.C. § 215

(a) (3), does not have an equivalent employee cause of action in § 16(b), no question arises with respect to the possible effect of a § 17 suit on the employee's cause of action under that section (the *Rigopoulos* problem).

In 1961 Congress reentered the field with the Fair Labor Standards Amendments of 1961. Pub.L.No. 87–30, § 12, 75 Stat. 74. It amended both § 16(b) and § 17. To § 16(b) was added the language:

> "The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 17 of this title in which restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this Act by an employer liable therefore under the provisions of this subsection."

This is the present language of the last sentence of 29 U.S.C. § 216(b) (1964). Section 17 was rewritten to provide:

> "The district courts * * * shall have jurisdiction * * * to restrain violations of § 15, including in the case of violations of § 15(a) (2) the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this Act (except sums which employees are barred from recovering, at the time of the commencement of the action to restrain the violations, by virtue of the provisions of section 6 of the Portal-to-Portal Act of 1947)."

This provision is substantially the present text of 29 U.S.C. § 217 (1964).

The effect of the amendment of § 17 is to restore fully the *Scerbo* remedy, but to make that remedy subject to the statute of limitations which would be applicable to an employee's suit at law. The effect of the addition to § 16(b) is to meet the *Rigopoulos* problem, by cutting off the employee's individual right to sue if the Secretary sues under § 17.

The Fair Labor Standards Amendments of 1961 were intended to bring about major shifts in the enforcement emphasis under the Act. Senate Report No. 145, 2 U.S.Code Cong. & Ad.News, 87th Cong., 1st Sess. 1961, p. 1658 sets forth the intended purpose:

> "Under the present provisions of the act, the Secretary of Labor has no authority to require the payment of minimum wages and overtime compensation not paid in compliance with the law except where an employee requests that an action be brought by the Secretary of Labor. This limitation has impeded the Secretary in his efforts to enforce the act since many · * * * are hesitant about requesting legal action against their employers."

The report points out that the amendment is intended to make investigations by the Secretary more effective by coupling the power to investigate and seek injunctions with the power to sue for back pay. It points out that no change is made in the power to sue for back pay in wrongful discharge cases which was recognized in Mitchell v. Robert De-Mario Jewelry, *supra.* Senate Report No. 145, *supra* at 1659.

The present problem arises because the Fair Labor Standards Amendments of 1961 did not deal with § 16(c) of the Act at all. Moreover the legislative history is silent on § 16(c), and in particular on the novel question proviso in that subsection. The novel question proviso was left intact in 1961, and again in 1966 when Congress made a slight amendment to § 16(c). Fair Labor Standards Amendment of 1966, P.L. 89–601, Title VI, § 601(a), 80 Stat. 844.

Under the enforcement method enacted in the 1961 amendments to § 16(b) and § 17 the § 16(c) remedy is for all practical purposes a dead letter. It is hard to imagine a situation in which the Secretary would elect to proceed under § 16(c) rather than under § 17. If the

novel question proviso is inapplicable to back pay cases under § 17 it is inapplicable to almost all back pay cases.

In restoring the *Scerbo* remedy the 1961 amendments dealt specifically with two troublesome problems under that remedy which were of concern to Congress in 1949; the absence of a statute of limitations, and the problem of later employee suits under § 16(b). Yet the 1961 amendments ignore the third problem that was of concern to Congress with respect to that remedy when § 16(c) was enacted. That was the fear that the Secretary would by bringing suits involving novel questions, subject unwitting employers to large, unexpected liabilities.

One case in which the Secretary did elect, after the 1961 amendments, to proceed (for reasons which do not appear) under § 16(c) rather than under § 17 is Wirtz v. Marino, 405 F.2d 938 (1st Cir. 1969). The First Circuit reversed a district court award of back pay to a single employee because a novel question was involved. Speaking of the novel question proviso the court said:

"If the proviso is to serve any purpose we believe that factual variations are not 'incidental' if they present a question the answer to which would not be clear to a normally informed and properly advised employer. 'Finally settled' is the opposite of doubt. So interpreted, the proviso fits a coherent statutory scheme. The Secretary of Labor is not an autonomous agency with powers of his own; enforcement of the Wage and Hour Act is limited to the courts. 29 U.S.C. §§ 216, 217. By the proviso Congress showed it did not wish to give the Secretary power to instigate or conduct litigation to obtain retrospective payments from employers who lacked adequate warning from existing, settled authority. Employers were not to be exposed to the powers of the government as a collection agency for liability innocently incurred, if indeed it was incurred, when the law's applicability to them was open to legitimate doubt. This is not unfair to the employee, who may still bring his own suit. It is not a handicap to the Secretary, who is unrestricted as to the future. With this compromise the competing interests of all parties are partially recognized. We will not disturb it." (footnote omitted) 405 F.2d at 942.

The *Marino* case probably represents the only situation in which the Secretary would ever invoke § 16(c) jurisdiction—the case of a suit requested by a single employee. Judge Aldrich's explanation of the congressional purpose not to subject an employer to the powers of the government as a collection agency on behalf of an employee for liability innocently incurred is as satisfactory a rationalization of the vestigial coverage of the proviso as has been given. Of course the same considerations of fairness apply with even greater force when the Secretary proposes to act as a collection agency for many employees against an employer for liability innocently incurred. But on the face of the statute, at least, Congress has not seen fit to inhibit either the Secretary's power or the courts' jurisdiction under § 17. As is often the case with statutes, if the results they compel or permit are anomalous the remedy must lie with Congress.

Actually the anomaly is not as great as would at first blush appear. The novel question proviso never applied to suits by individual employees under § 16(b). It never applied to suits by the Secretary or others for injunctive relief under § 17. It only applied to that small class of cases in which an employee requested the Secretary to sue on his behalf for withheld compensation. The 1949 Act, as was pointed out hereinabove, removed from the original bill the provision that the Secretary could act under § 16 (c) with the employee's consent rather than on his request. Thus § 16(c) has always afforded only a closely circumscribed remedy. By contrast the 1961 amendments to § 16(b) and § 17 reflect a congressional decision to create a broad new enforcement mechanism, and there is nothing from which we can infer an intention that the broad remedy enacted

in § 17 must be read *in pari materia* with the narrow remedy of § 16(c). Indeed the 1961 amendments reflect a shift in emphasis from private enforcement (employee suits or employee requests to the Secretary to bring a suit) to public enforcement on the initiative of the Secretary. Section 16(c) and § 17 are not, therefore, *in pari materia*.

Except for Judge Cohen's district court opinion in this case, the only other case which has been called to our attention discussing the defendant's precise novel question contention is Hodgson v. American Can Co., 440 F.2d 916 (8th Cir. 1971), and it relied heavily on Judge Cohen's opinion in rejecting that contention. *Cf.* Shultz v. Mistletoe Empress Service, Inc., 434 F.2d 1267 (10th Cir. 1970). Other cases have held, however, that the Secretary's action under § 17 is not subject to other requirements of a § 16(c) action. In Wirtz v. Jones, 340 F.2d 901 (5th Cir. 1965), for example, the court rejected the contention that an employer was entitled to a jury trial on a § 17 back wages claim because he would be entitled to such a trial under § 16(c). We agree that the Secretary's equitable action under § 17 is not burdened by the jurisdictional or other restrictions of § 16(c).

It might be argued that since the § 17 remedy is solely an equitable remedy the court should, in the exercise of an equitable discretion, apply to that remedy the policy of the novel question proviso and refuse to order back pay. An analogy would be the adoption of an analogous statute of limitations as a measure for laches. But it must be kept in mind that if the Secretary sues for back pay under § 17 the employee's right to sue is cut off by the last sentence of § 16(b). We could eliminate this difficulty by construing that sentence as applicable only to cases where the Secretary's suit is successful; that is to cases in which the equity court does not recognize the novel question proviso. Still, difficulties would remain, for it would be far from clear whether any given case involved a novel question. Employees in reasonable reliance on the Secretary's § 17 suit might refrain from suing only to have the court refuse to award back pay years later. Meanwhile the statute of limitations in 29 U.S.C. § 255 (Supp. III, 1968) would have continued to run against their individual § 16(b) causes of action. This would hardly be an equitable outcome.

We conclude, therefore, that there is no way in which the novel question proviso may properly be applied in a § 17 lawsuit.

This conclusion makes unnecessary any discussion of the other issue tendered by the defendant: whether the case involves issues which are factual rather than legal or if legal not novel.

■ The appellant also objects to the award of interest. An employee in a § 16(b) suit can recover liquidated damages, but neither § 16(c) nor § 17 provide for liquidated damages, and neither mentions interest specifically. Defendant's argument is that the omission of the authority to award liquidated damages evidences a congressional intention not to permit recovery of anything except the amount of wages withheld. The same contention was made to and rejected by the Eighth Circuit in Hodgson v. American Can Co., *supra*. We also reject it. Where a statute is silent with respect to interest the rule is that "in the absence of an unequivocal prohibition of interest on [federal statutory] obligations, this Court has fashioned rules which granted or denied interest on particular statutory obligations by an appraisal of the congressional purpose in imposing them and in the light of general principles deemed relevant by the Court." Rodgers v. United States, 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947). The liquidated damages provision in § 16(b) was not included primarily as compensation for the withholding of money. It was intended to promote private suits, and thereby to minimize the government's enforcement costs. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 705 n. 16, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). But in the 1961 amendments the governmental policy toward enforcement

changed from reliance primarily on private enforcement to reliance on enforcement by the Secretary. There is no reason to believe that because Congress continued the stimulus of liquidated damages for private suits it must have intended to deprive the employees of compensation for the withholding of money in those instances where the Secretary acted. If the employee recovers liquidated damages in his suit under § 16(b) such liquidated damages include compensation for the withholding of money. Brooklyn Savings Bank v. O'Neil, *supra*; Landaas v. Canister Co., 188 F.2d 768 (3rd Cir. 1951). But where the Secretary sues under § 17, and thus cuts off the individual employee's right to sue under § 16(b) there is no reason why the order of the equity court should not include compensation, by way of interest, for the money wrongfully withheld.

Finally appellant objects to that part of the district court's order which directed payment of back wages for former employees not located within three years, to the Treasury of the United States. The actual language of the judgment is borrowed from § 16(c), which provides that in a § 16(c) suit, "Any such sums not paid to an employee because of inability to do so within a period of three years shall be covered into the Treasury of the United States as miscellaneous receipts." There is no equivalent provision in § 17. The effect of reading into § 17 the escheat provision of § 16(c) is to treat these statutes as being partly *in pari materia*. We have said above that Congress did not intend that they be so read.

■■ This does not mean, however, that a court of equity in a § 17 case has no authority to order sums wrongfully withheld which cannot be promptly paid over to an employee, deposited with the Treasurer of the United States. One purpose of the Fair Labor Standards Act is the protection of competing enterprises from the unfair competition which would result from an employer using as working capital employee compensation unlawfully withheld. Senate Report No. 145, *supra* at 1621, 1658–59. To fully implement this purpose the court may require that all compensation wrongfully withheld be paid either to those employees and former employees who can be located, or to the court to be held for missing former employees or their personal representatives. Authority for the receipt of the sums owing to missing former employees may be found in 28 U.S.C. §§ 2041, 2042 (1964).[2] If the Court receives the funds under these provisions the money will remain on deposit with the Treasurer of the United States subject to withdrawal, by court order, on a petition by a claimant. There is never a permanent escheat to the United States. *See, e. g.*, In Re Moneys Deposited, etc., 243 F.2d 443 (3rd Cir. 1957). A State may succeed via escheat to the money, United States v. Klein, 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1938), but the defendant may not claim the unpaid amounts. Hansen v. United States, 340 F.2d 142 (8th Cir. 1965). The district

2. "28 U.S.C. § 2041. Deposit

"All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.

"This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court."

"28 U.S.C. § 2042. Withdrawal

"No money deposited shall be withdrawn except by order of court.

"In every case in which the right to withdraw money deposited in court has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him."

court's order, adopting the language found in § 16(c) of the Fair Labor Standards Act apparently has the intended effect of causing a permanent escheat to the United States. We do not think Congress intended that result when, in 1961, it created the enforcement method set forth in § 17. But *cf.* Burk Builders, Inc. v. Wirtz, 355 F.2d 451 (5th Cir. 1966).

The judgment of the district court, as to paragraph (c), will be vacated and the cause remanded for the entry of an order modifying paragraph (c) to provide that any money not distributed to employees or their personal representatives within a period to be fixed by the court shall be deposited with the Clerk of the district court who shall forthwith deposit such money with the Treasurer of the United States pursuant to 28 U.S.C. § 2041 (1964). The judgment will in all other respects be affirmed.