**Ray MARSHALL, Secretary of Labor United States Department of Labor, Plaintiff-Appellant,**

v.

**QUIK–TRIP CORPORATION, a Corporation, and William Bell, and John Cly, and John Scott, and Richard Slivocka, and Dennis R. Wilcox, Defendants-Appellees.**

No. 79–1843.

United States Court of Appeals, Tenth Circuit.

March 12, 1982.

Peter B. Dolan, Atty., U. S. Dept. of Labor, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Donald S. Shire, Associate Sol., Mary Helen Mautner, Atty., U. S. Dept. of Labor, Washington, D. C., and Tedrick A. Housh, Jr., Regional Sol., Kansas City, Mo., were also on the brief), for plaintiff-appellant.

Richard Barnes, Tulsa, Okl. (Kothe, Nichols & Wolfe, Inc., Tulsa, Okl., were on the brief), for defendants-appellees.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

The Secretary of Labor brought this action under §§ 16(c) and 17 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(c) and 217, seeking to enjoin defendants from violating overtime compensation provisions of the FLSA and to recover back wages and liquidated damages for the employees affected. The Secretary alleged that defendants Quik-Trip and William Bell had filed with the Department of Labor "reports of retroactive payment of overtime compensation" which defendants Quik-Trip and Bell knew to be materially false, in violation of 29 U.S.C. §§ 211(c) and 215(a)(5), and 29 CFR § 516.2(b)(2), (Complaint § X, I R. 4); that the defendants had violated the child-labor provisions of the FLSA, 29 U.S.C. § 212(c) and 29 CFR 570.-35; and that the defendants, in violation of 29 U.S.C. § 215(a)(3), had discharged and threatened to discharge employees who complained of or testified concerning violations of the FLSA.

The district court found that defendants had violated the Act's overtime provisions and that they had failed to make, keep, and preserve adequate records. The court awarded back wages and liquidated damages to 14 named employees, and enjoined

defendants from further violations of the FLSA. (I R. 38–40). The child-labor claim was dismissed for want of evidence, (I R. 34), and the court found that there had been no retaliatory discharges in violation of 29 U.S.C. § 215(a)(3). (I R. 38).

The court did not, however, grant any relief concerning back wage and overtime payments to six other employees who either tore up or did not cash checks covering such payments given to these employees pursuant to a settlement agreement with the Secretary.

Concerning these six employees, the Secretary challenges on appeal the court's Finding of Fact No. 9 (I R. 38) that defendants Quik-Trip and Bell did not file materially false reports of retroactive payment of overtime compensation in violation of 29 U.S.C. §§ 211(c) and 215(a)(5), and 29 CFR § 516.2(b)(2), and appeals from the court's denial of relief for this alleged violation. (Brief for the Secretary of Labor at 2 & n.2). The court found:

> 9. Defendants Quik-Trip Corporation and William Bell did not file with a representative of the plaintiff [reports] of retroactive payment of overtime compensation which were false in a material respect. There was no evidence that any employee who signed a receipt for payment of back wages had not received a payment check before signing.

(I R. 38).[1]

## I

Quik-Trip Corporation operates a chain of retail convenience stores in Wichita, Kansas and other cities. Defendant William Bell was at all relevant times a division manager for Quik-Trip (I R. 10); defendants John Cly, John Scott, Richard Slivocka, and Den-

nis R. Wilcox were at all relevant times managers or district supervisors for Quik-Trip. (I R. 10–11).

As a result of an investigation of Quik-Trip's wage practices by the Department of Labor's Wage and Hour Division, in March, 1975 Quik-Trip distributed some back wages for overtime work, apparently pursuant to a settlement agreement.[2] (II R. 29–31, 141–42, 170–71, 173, 180–81). Defendant Bell was in charge of distributing the back wages. (II R. 148, 170–71). Mr. Bell testified that checks for back wages were sent to former employees by mail, along with a note which

> said that we felt that the Quik-Trip Corporation was not liable for these funds and that Quik-Trip felt that they had not violated any of the wage and hour laws, but we had decided to settle so we could bring the case to a close and get back to business.

(II R. 170; see II R. 180–81).

Current employees were required to claim their back wages in person from Division Manager Bell in his office. (II R. 30, 83–84, 148, 170–71). In some cases the individual employee and Mr. Bell were alone in Bell's office when the check was handed to the employee. (II R. 30, 142). In one instance, District Supervisor Richard Slivocka and possibly Personnel Manager John Cly were also present. (II R. 84). The employee was required to sign a receipt which was later filed with the Wage and Hour Division.[3] (II R. 32, 142, 150–53, 170–71). One employee testified that he was required to sign the receipt before Mr. Bell handed the check to him, (II R. 32; see also II R. 150.9), but there is dispute as to whether this order of events was typical. (See II R. 142–43, 152, 171).

---

1. It seems apparent that the word "reports" was inadvertently omitted from the finding. It was included in a proposed finding of the defendants along this line, which the trial judge apparently intended to adopt.

2. The settlement agreement is only alluded to in the record and the briefs, and it is not a part of our record. Each receipt for back wages was signed by Bell on behalf of Quik-Trip and recites that payment is for "unpaid wages due"

the employee under the FLSA. See n.3, infra. The existence of the settlement agreement and its coverage of the six employees in the amounts stated in the receipts seems to be common ground between the parties on appeal.

3. The receipts consisted of printed forms, each signed by the employee and Mr. Bell. See Appendix A.

In any event, it is uncontested that six employees for whom Quik-Trip filed receipts indicating payment of back wages never cashed their checks.[4] (II R. 151, 153; Brief for Quik-Trip Corporation *et al.* at 2). Four of the employees tore up their checks either in Mr. Bell's presence or in the hall after leaving his office. (II R. 31, 33, 142–43, 149–50, 152). Bell testified that he knew at the time that the four employees had torn up their checks and that he notified Quik-Trip's attorneys that "5 or 6 of the people, did not cash their checks." (II R. 150, 149–53).

There is a dispute over what transpired when Mr. Bell handed the checks over and asked the employees to sign the receipts. Bell testified that in explaining the settlement to the current employees he used the contents of the note, paraphrased above, which he sent to former employees, (II R. 170–71):

> This is what I told each employee when they came in and I handed them their check, asked them if they would sign the receipt showing that they had been given the check, and all of them did that.
>
> Some of the employees said they wouldn't take the check. But I informed them that they were instructed that they had to take the check and would they please take the check and sign the receipt showing that we had offered to pay them.

(II R. 171). Ms. Monroe testified that Bell "told me it was my prerogative, I could take the check if I wanted to." (I R. 142). She then tore up the check and gave it back to Bell. (*Ibid.*).

Kenneth Karsk, one of the employees who cashed his check, testified that Bell or someone else told him he could either keep the check or throw it in the trash. (II R. 84). Karsk also testified that after he left Bell's office District Supervisor Slivocka told Karsk that he could keep his check because of his financial difficulties, but that he should keep quiet. (II R. 84–85). Stephen McLaren, another employee who accepted his check, testified that before handing over the check Bell

> was trying to tell me the company's position on this investigation of the Federal Wage and Hour Board and he used some expletives, foul words, in relation to his attitude towards the government investigation and the government in general and it was his attitude that the government was meddling in business that was not theirs to meddle in. . . .

\* \* \* \* \* \*

> Bill Bell pulled out a manila envelope and said 'Jim Anshutz and Terry Cushman have been in front of you and they have torn their checks up.' And he said 'It is our opinion that you don't deserve this money, that you didn't work all these extra hours, and these people have torn up their checks.'

(II R. 31). McLaren testified that the manila envelope contained at least one torn check, with Jim Anschutz's name on it. (II R. 32–33). Later, his District Supervisor, Dennis R. Wilcox, told McLaren he had made a mistake by taking the check. (II R. 33).

As noted, there was a claim of retaliation against employees who cooperated with the Wage and Hour Division in its investigation or who accepted back wage checks. The district court, however, concluded that the discharged employees were dismissed for cause, (I R. 38), and the Secretary does not challenge this finding, (Brief for the Secretary of Labor at 2 n.2).

On appeal, the Secretary argues that, even assuming that the six employees who tore up their checks or failed to cash them did so voluntarily, Quik-Trip had not satisfied its statutory obligation to pay back wages for FLSA violations where it knowingly retained those back wages and where it filed with the Secretary receipts which it

---

4. The six employees and the net amount of back wages for each were: Billie Monroe, $81.82 (I R. 52); Jim Anschutz, $162.12 (I R. 53); Tom Bornowski, $10.09 (I R. 54); Don Peterson, $49.67 (I R. 55); John Miller, $769.59 (I R. 56); and Terry Cushman, $171.87 (I R. 57). At least six other employees who claimed their checks in person did cash them. (II R. 32, 86, 169).

therefore knew to be false (Brief for the Secretary of Labor at 2, 6, 10–11); that this first argument need not be addressed since the evidence clearly shows that the employees' actions were not voluntary and therefore amounted to illegal kickbacks (Brief for the Secretary of Labor at 11–17); that an employer may not retain back wages which employees refuse or are unable to collect (Brief for the Secretary of Labor at 17–19); and that such refused back wages must be paid to the Secretary, subject only to the employees' claims (Brief for the Secretary of Labor at 17; Reply Brief for the Secretary of Labor at 7 n.7).

Defendants argue that the Secretary is seeking on appeal relief not sought from the district court (Brief for Quik-Trip Corporation, *et al.* at 2); that the Secretary is seeking relief under both § 16(c) and § 17 of the FLSA, 29 U.S.C. § 216(c) and § 217, which are mutually exclusive and subject to the doctrine of election of remedies (Brief for Quik-Trip Corporation, *et al.* at 2–3); and that the district court had discretion as to whether to order payment of unclaimed back wages to the Treasury, which discretion was not abused by not ordering such payment. (Brief of Quik-Trip Corporation, *et al.* at 4–5).

The Secretary in reply argues that § 16(c) and § 17 of the FLSA are not mutually exclusive (Reply Brief for the Secretary of Labor at 2–5); and that its prayer for relief was sufficient in light of Fed.R. Civ.P. 54(c) (Reply Brief for the Secretary of Labor at 5–7).

## II

◼ We turn first to the defendants' argument that the Secretary is impermissibly seeking relief not sought below. It is true that the Secretary did not specifically request the district court to grant relief regarding the six employees' back wages, outlined in footnote 4, *supra*. (*But see* I Supp. R. 9, 11, 12, 18). Nevertheless, both the complaint and the pre-trial order clearly

alleged the knowing filing of materially false reports of retroactive payment of overtime compensation. (I R. 4, 12, 13, 14). As noted, the district court admitted substantial amounts of testimony and several exhibits relating to the receipts concerning these six employees and the circumstances surrounding their preparation. Thus the issue was actually tried by consent, in any event. *See Stone v. First Wyoming Bank N.A., Lusk*, 625 F.2d 332, 348 (10th Cir.).

Except where judgment is by default, "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings.*" (emphasis added) Fed.R.Civ.P. 54(c). And it is established that the complaint need not name the employees for whom § 17 relief is sought. *Hodgson v. Virginia Baptist Hospital, Inc.*, 482 F.2d 821, 822, 824 & n.10 (4th Cir.). Thus the Secretary's failure specifically to request relief relating to these six employees does not preclude such relief, even though the Secretary did request particular relief relating to other named employees. *See Stroud v. B–W Acceptance Corp.*, 372 F.2d 185, 189 (10th Cir.) (attorneys' fees properly awarded even though not demanded); *International Harvester Credit Corp. v. East Coast Truck & R. V. Sales, Inc.*, 547 F.2d 888, 891 (5th Cir.) (rescission may be granted even though not demanded, unless failure to demand the relief was prejudicial).[5]

## III

◼ We find no merit in the defendants' argument that § 16(c) and § 17 of the FLSA, 29 U.S.C. §§ 216(c) and 217, are mutually exclusive remedies between which the Secretary must elect. *See generally Hodgson v. Wheaton Glass Co.*, 446 F.2d 527, 529–33 (3d Cir.) (discussing the history of the different remedies for violation of the FLSA). The cases which defendants cite do not support their argument. *Shultz v. Mistletoe Express Service, Inc.*, 434 F.2d

---

**5.** The defendants here do not contend that they were prejudiced by the Secretary's failure specifically to demand relief.

1267, 1272 (10th Cir.), held that in an action under § 217 to restrain continued withholding of unpaid minimum wages and overtime compensation, a good-faith defense based on a belief of lack of coverage is no bar to an injunction to prevent enrichment of the employer by retention of amounts it should have paid. No election problem was involved. *Wirtz v. Marino*, 405 F.2d 938 (1st Cir.), was brought solely under § 216(c); the court construed the term "settled" in the novel question proviso then applicable to suits under § 216(c). 405 F.2d at 941–42 & n.11.

We find no support in the statute or the cases for the proposition that in the same suit the Secretary cannot obtain relief as to some employees under § 216(c) and as to others, like the six we are concerned with, under § 217. Moreover the joinder of the claims comes clearly within the liberal joinder provisions of Fed.R.Civ.P. 18(a).

## IV

■ We turn now to the Secretary's contention that the trial court erred in not granting injunctive relief as to the unpaid wages and overtime due under the statute to the six employees who had either torn up or not cashed their checks. *See* note 4, *supra.* The Secretary argues that (1) the refusals of these employees to accept the payments were all involuntary, occurring under coercive circumstances; and (2) the statutory obligation to pay the back wages to these employees remains unsatisfied in view of the "kick-back" of the payments, so that equitable relief against continued withholding of these sums by the employer should be granted in any event.

There is substance to the argument that the employees' actions were not voluntary. We have noted the circumstances in Part I and they arguably support the Secretary's contention. The circumstances surrounding the delivery of the checks and the signing of the receipts by the employees, who were economically dependent on the company, could be viewed as coercive. *Cf. NLRB v.*

*Gissel Packing Co., Inc.,* 395 U.S. 575, 617, 89 S.Ct. 1918, 1941–42, 23 L.Ed.2d 547; *NLRB v. Townhouse T.V. & Appliances, Inc.,* 531 F.2d 826, 828 (7th Cir.); *NLRB v. Varo, Inc.,* 425 F.2d 293, 297–98 (5th Cir.).

However, the question of the voluntariness of the employees' refusal of the payments and their signing of the receipts, and of possible coercion by the company, involves a factual dispute. The findings of the trial court and particularly Finding 9, quoted earlier, appear to reject the charge of coercion. We need not resolve this question, however, because the statute and regulations support the Secretary's position that the further remedial relief he seeks is required in any event. (*See* Brief for the Secretary of Labor at 11, 19; Reply Brief for the Secretary of Labor at 3 n.2, 5–7). We hold that equitable relief should be granted against withholding by defendants of the back wage and overtime sums for the six employees on the basis of the admitted fact that the employer retains the funds; we need not determine whether any reports, known to be false, were filed concerning payment of said sums, and do not make that determination.

Even if there was no coercion either intended or perceived here, the fact remains that the company has not satisfied its obligation to pay these back wages and overtime obligations. It is common ground that the six employees named in footnote 4, *supra*, have not applied to their benefit the back wages due them as agreed under the settlement.[6] The "receipts" signed by the employees cannot defeat their rights to the payments required by the Act. The Supreme Court recently stated that

This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate.

---

6. Defendants do not dispute that the sums indicated were due the six employees under the settlement agreement. (*See* Brief for Quik-Trip Corporation *et al.* at 2).

*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740, 101 S.Ct. 728, 1444–45, 67 L.Ed.2d 641. *See also Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 703, 713, 65 S.Ct. 895, 905, 89 L.Ed. 1296 (where the release was not given in settlement of a bona fide dispute as to coverage or amount due, waiver of liquidated damages due under § 16(b) of the FLSA is prohibited); *Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792, 794–95 (10th Cir.); *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196 (5th Cir.), *cert. denied*, 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 688; *Mitchell v. Greinetz*, 235 F.2d 621, 625 (10th Cir.); *Handler v. Thrasher*, 191 F.2d 120, 123 (10th Cir.).

Nor has the employer's obligation under a consent decree to pay back wages been extinguished where the employee voluntarily repays part or all of the sum to the employer.[7] *See United States v. Barnette*, 546 F.2d 187, 189 (5th Cir.), *cert. denied*, 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 79. The Wage and Hour Division regulations provide that

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash.

29 CFR § 531.35 (1981), 32 Fed.Reg. 13575, September 28, 1967; *accord, Brennan v. Heard*, 491 F.2d 1, 3–4 (5th Cir.); *Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1369–70 (5th Cir.).

As empowered by the Act,[8] the district court should have included in the decree an order restraining defendants from withholding the sums due the six employees. The policies of the Act would be nullified if the employer were permitted to retain sums which were refused or went unclaimed. *See Brooklyn Savings Bank v. O'Neil*, *supra*, 324 U.S. at 704, 710–13, 65 S.Ct. at 900, 903–05; *Hodgson v. Wheaton Glass Co.*, *supra*, 446 F.2d at 535. The court may prevent the nullification of the policies of the Act by providing that such sums be paid to the clerk of the district court for deposit with the Treasurer of the United States, to be held on behalf of the employees.[9] *Hodgson v. Yb Quezada*, 498 F.2d 5, 6 (9th Cir.); *Hodgson v. Wheaton Glass Co.*, *supra*, 446 F.2d at 535–36; *Burk Builders, Inc. v. Wirtz*, 355 F.2d 451, 453 (5th Cir.); *Wirtz v. Dill*, 55 Lab.Cas. (CCH) ¶ 31,949 (D.N.M. 1967). *See* 28 U.S.C. §§ 2041, 2042.

Therefore the judgment should be modified to provide that the employer is enjoined from withholding said sums due the six employees in question; and that if said persons are unavailable or payment to them is impossible for any reason, then the sums should be paid to the clerk of the district court for deposit with the Treasurer of the United States to be retained subject to claims of the employees for their payments,

---

**7.** The Wage and Hour Division regulations recognize that the employee cannot voluntarily assign FLSA wages to his employer:

> Where an employer is directed by a voluntary assignment or order of his employee to pay a sum for the benefit of the employee to a creditor, donee, or other third party, deduction from wages of the actual sum so paid is not prohibited: *Provided*, That neither the employer nor any person acting in his behalf or interest, directly or indirectly, derives any profit or benefit from the transaction....

29 CFR § 531.40(a) (1981), 32 Fed.Reg. 13575, September 28, 1967; *accord, Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1370 (5th Cir.).

**8.** Section 17 of the FLSA, 29 U.S.C. § 217, provides in pertinent part:

> The district courts ... shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter ...

**9.** Unlike unclaimed funds awarded under § 16(c) of the FLSA, which escheat to the United States by statute, 29 U.S.C. § 216(c), payments ordered under § 17 never permanently escheat to the United States. *Hodgson v. Wheaton Glass Co.*, *supra*, 446 F.2d at 535.

unless exceptional circumstances are demonstrated to the court justifying reversion of the funds to the employer.[10]

Accordingly the judgment is reversed in part and the case is remanded for further proceedings and modification of the judgment, in accordance with this opinion.

## APPENDIX A

### RECEIPT FOR PAYMENT OF BACK WAGES

As computed or approved by the Wage and Hour Division Employment Standards Administration U.S. Department of Labor

I, _____, hereby acknowledge receipt of payment in full from Quik-Trip Corporation for the period beginning with the workweek ending _____ through the workweek ending _____ of unpaid wages due me . . . under . . .

\* \* \*

__X__   Fair Labor Standards Act

\* \* \*

Net amount received $_____

NOTICE TO EMPLOYEE.—Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this receipt unless you have actually received payment of the back wages due.

Signature of employee _____

Date _____ Address _____

### EMPLOYER'S CERTIFICATION

To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) _____ paid the above-named employee in full covering unpaid wages as stated above.

Signed /s/ William Bell   Title Division Manager

PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS

---

**10.** Our present record indicates no "exceptional circumstances" which would justify retention of the sums by the employer. The employer should, however, be permitted on remand to make a showing on this question if it seeks to do so, before entry of the modified decree. *See Hodgson v. Yb Quezada*, 498 F.2d 5, 6 (9th Cir.).