## UNITED STATES v. CONTINENTAL CASUALTY CO.

Civ. A. No. 7144.

United States District Court
E. D. Pennsylvania.

June 27, 1949.

As Amended July 12, 1949.

Edward A. Kallick, Asst. U. S. Atty., Philadelphia, Pa., Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., for plaintiff.

H. Rook Goshorn, Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

Both parties have moved for summary judgment upon the third cause of action.

It is an undisputed fact that the contractor did not pay its employees any wages during the period beginning with the pay roll week ending October 17, 1941, and ending with the pay roll week ending November 19, 1941, the amount of such unpaid wages being $20,127.41. It is also a fact that the contractor did not have the money to pay its employees during the period in question and that at the end of the period it was declared a bankrupt.

It is not the defendant's contention that bankruptcy excuses the contractor's default or relieves its surety. The defendant does contend that, because the contracts with the government used the words prescribed for such contracts by the Walsh-Healey Act, 41 U.S.C.A. §§ 35-45, its language must be construed with reference to the objective of that Act which, the defendant says, is solely to compel government contractors to set up an approved wage scale, with no intention to make them conform to it, leaving workingmen who have not been paid to their ordinary remedies.

The argument, however, it seems to me, loses sight of the fact that the action is upon a bond (two bonds in fact) and that a bond is a contract.

The undertaking of the surety in each is substantially the same, namely, that the contractor will "well and truly perform and fulfill all the undertakings, covenants, terms, conditions and agreements" contained in his government contract.

Turning to the contracts, both contain the provision "All persons employed by the contractor * * * will be paid, without subsequent deduction or rebate on any account, not less than the minimum wages as determined by the Secretary of Labor", etc. These two provisions define in words which can admit of no question the contractual obligations upon which the suit is brought.

Even if the sole purpose of the Act were as the defendant argues, the defendant would still have a long way to go to convince the Court that the intent of the lawmakers in adopting certain language in a statute carries over into the minds of the parties to a contract who use the same language. But I am satisfied that the purpose and intent of the Walsh-Healey Act was no narrower than its plain language, namely, to insure that persons employed by government contractors would be *paid* not less than the minimum wages as determined by the Secretary of Labor. If the Act were drawn as the defendant conceives it, it would read that the contractor must agree "in good faith to endeavor to maintain the minimum wages as determined by the Secretary of Labor" or words to that effect. No such futile legislation could have been intended.

The second point made by the defendant, namely, that because the plaintiff does not and cannot specify the amount of damages accruing from each breach the complaint must be dismissed, is without merit. The decisions cited by the defendant are cases in which the same bonding company in separate bonds guaranteed payment for labor and materials furnished different contractors. This case presents a wholly different question. Here, although each bond guaranteed the performance of a separate contract there was only one contractor and the total amount of damages arising from the breaches of both contracts is definitely ascertained. The defendant could have required the contractor to segregate his labor costs as a condition to its bonding him. It is difficult to see how any injustice can arise to the defendant through failure to allocate the damages to each particular bond. In fact, as a practical matter, segregation of labor costs is not often contemplated. It is the exceptional case in which an industry engaged in the performance of numerous contracts does or can with exactness allocate to each contract its proportionate share of ordinary labor, where employees are engaged in the general work of the plant, frequently working on one job after another several times in a day.

Judgment may be entered for the plaintiff.

A summary judgment, interlocutory in character, may be entered for the plaintiff on the Third Cause of Action, the amount of damages recoverable thereunder to be subsequently ascertained.