**UNITED STATES of America,**
**Plaintiff,**

**v.**

**POWERS BUILDING MAINTENANCE COMPANY, a corporation, and United States Fidelity and Guaranty Company, a corporation, Defendants.**

**Civ. No. 71-467.**

United States District Court,
W. D. Oklahoma,
Civil Division.

Jan. 13, 1972.

William R. Burkett, Jerry Cord Wilson, Oklahoma City, Okl., for plaintiff.

Ralph W. Newcombe, Lawton, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

The Plaintiff, United States of America, sues to recover judgment against the Defendant Powers Maintenance Company (Powers), for the amount it failed to pay as minimum monetary wages to its employees as required by the McNamara-O'Hara Service Contract

Act of 1965, 79 Stat. 1034, 41 U.S.C.A. § 351 et seq. and the Government contracts as such amount has been determined by a Hearing Examiner and the Administrator of the Wage and Hour and Public Contracts Division of the Department of Labor. Judgment is also sought against the Defendant United States Fidelity and Guaranty Company (USF & G), Powers' surety, for the same amount. The Plaintiff has moved for summary judgment. In support of this Motion the Plaintiff has attached as an exhibit the record of the Hearing Examiner and the Administrator of the Wage and Hour and Public Contracts Division of the Department of Labor. The said Motion has been fully briefed by the parties.

The Plaintiff entered into two contracts with Defendant Powers for building maintenance services at Ft. Hood, Texas, during the period July 1, 1966 to June 30, 1967 and July 1, 1967 through June 30, 1968, respectively. These contracts contained the clause required by the Service Contract Act of 1965 (41 U.S.C.A. § 351) providing for the payment of minimum monetary wages. Defendant USF & G, as surety, with Defendant Powers as principal, executed performance bonds binding themselves to the United States of America for payment if the latter should fail to perform and fulfill all the terms and conditions of the two afore-mentioned contracts.

A hearing authorized by 41 U.S.C.A. § 39 and applicable here by 41 U.S.C.A. § 353(a) was held on August 27, 1969, before a Hearing Examiner of the United States Department of Labor. Based upon the evidence presented to him, the Hearing Examiner entered findings of fact, conclusions of law and an Order on December 18, 1969 wherein he had held that Defendant Powers had failed to pay its employees the minimum monetary wages required by the Act and its Government contracts.[1]

Under the provisions of 29 C.F.R. § 6.11 the Defendant Powers filed exceptions to the decision of the Hearing Examiner and transmitted these to the Chief Hearing Examiner who in turn sent the record of the proceedings to the Administrator of the Wage and Hour and Public Contracts Division of the Department of Labor for review. The Administrator affirmed the decision of the Hearing Examiner on December 18, 1970. It is not shown that an appeal was taken from this affirmance. It is therefore assumed that the findings, conclusions and Order of the Hearing Examiner are final.

■■ 41 U.S.C.A. § 39 provides in part as follows:

" * * * the Secretary of Labor, or an impartial representative designated by him, shall have the power to hold hearings and to issue orders requiring the attendance and testimony of witnesses and the production of evidence under oath. * * * and shall make findings of fact after notice and hearing, which findings shall be conclusive upon all agencies of the United States, and if supported by the preponderance of the evidence, shall be conclusive in any court of the United States; * * * *"

---

1. The Hearing Examiner's findings of fact entered on December 18, 1969 provide as follows:

"IV. Under the contracts, Respondent was obligated to furnish maintenance services for a prescribed number of buildings. Crews consisting of two or more employees were assigned to a given number of buildings. Respondent generally determined in advance the hours worked by each member of a crew, using a formula based on the total square footage and types of buildings serviced. Employees were compensated weekly at the applicable rate times the total number of predetermined hours. In order to complete the work in a satisfactory manner, employees consistently worked beyond a scheduled quitting time and in some instances during lunch periods. Though the uncompensated hours varied to some degree from day to day, week to week the average of daily and weekly total amounts at such time can be justly and reasonably inferred from the evidence."

In view of this statutory enactment, it is well settled under the Walsh-Healey Public Contracts Act of June 30, 1936 (49 Stat. 2036), 41 U.S.C.A. §§ 35–45, that findings of fact made by a Hearing Examiner in administrative proceedings conducted pursuant to such Act are conclusive in any court of the United States if supported by the preponderance of the evidence. Harp v. United States, 173 F.2d 761 (Tenth Cir. 1949), cert. den. 338 U.S. 816, 70 S.Ct. 56, 94 L.Ed. 494. The above Statute is applicable to findings of fact issued by a Hearing Examiner in administrative proceedings conducted pursuant to the McNamara-O'Hara Service Contract Act by virtue of 41 U.S.C.A. § 353(a) and Defendants are not entitled to a trial de novo. United States v. Southland Manufacturing Corporation, 264 F.Supp. 174 (D.C. P.R.1967). Rather, in an action for a judgment based on such findings, Defendants are entitled to a determination as to whether the findings of fact, conclusions of law and decision or Order of the Hearing Examiner, as affirmed by the Administrator, are supported by the preponderance of the evidence. United States v. Southland Manufacturing Corporation, supra; Harp v. United States, supra.

▆ Authority for the Plaintiff to institute this action for judgment is found in 41 U.S.C.A. § 354(b), which provides for. enforcement of the provisions of the Service Contract Act of 1965 by the United States bringing an action against the contractor or any sureties in any court of competent jurisdiction. In such an action administrative findings are presumptively correct, and the burden is on the Defendant to show that these findings are not supported by the preponderance of the evidence. United States v. Southland Manufacturing Corporation, supra, United States v. Sweet Briar, 92 F.Supp. 777 (D.C.S.C.1950).

▆▆ From a review of the record herein the Court concludes that the findings of the Hearing Examiner are sustained by the preponderance of the evidence. On the question of uncompensated hours of work considerable testimony came from Defendant Powers' employees. They testified that they worked many additional hours without pay. Defendant Powers' records did not show such extra hours of work. Defendant Powers presented witnesses who denied that the employees put in uncompensated hours of work as claimed. The Hearing Examiner was required to choose between conflicting versions of the true situation. The credibility of witnesses relied upon by the Hearing Examiner in arriving at his findings is his exclusive function and his findings can be overruled only where, on the basis of the record, they were clearly incorrect. United States v. Southland Manufacturing Corporation, supra; National Labor Relations Board v. Dinion Coil Co., 201 F.2d 484 (Second Cir. 1952). There was also evidence of Powers' use of an arbitrary formula for determining in advance hours to be worked which was based on total square footage and types of buildings assigned and serviced rather than actual hours worked. The Hearing Examiner allowed a conservative portion of the uncompensated hours to which Defendant Powers' employees testified in computing the amounts of underpayment. It is believed that there was sufficient evidence before the Hearing Examiner to show the amount and extent of uncompensated work as a matter of just and reasonable inference. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Defendants have failed to sustain their burden of showing that the factual findings of the Hearing Examiner are not supported by the preponderance of the evidence before him. The Court finds from a review of the record that the same are supported by the preponderance of the evidence.

▆ The Service Contract Act of 1965 makes no provision for allowance of interest on amounts recovered as underpayments of wages. The question of the right to interest in this situation is a question of federal law. Brooklyn

Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). Neither the Supreme Court nor our Circuit has specifically decided whether prejudgment interest is to be awarded where, as here, a court does not award liquidated damages.[2] In the analogous cases of wage underpayments covered by the Fair Labor Standards Act, 29 U.S. C.A. § 201 et seq., without provision for liquidated damages, the Third, Sixth and Eighth Circuits have ruled that prejudgment interest is recoverable. Hodgson v. Wheaton Glass Co., 446 F.2d 527 (Third Cir. 1971); McClanahan v. Mathews, 440 F.2d 320 (Sixth Cir. 1971); Hodgson v. American Can Company, 440 F.2d 916 (Eighth Cir. 1971). We adopt the reasoning and conclusion of these cases as being determinative here. Plaintiff is entitled to recover prejudgment interest at the rate of 6% per annum from the various due dates to the date of payment of the back wages.

■ The remaining issue in this case is whether the findings, conclusions and decision of the Hearing Examiner are binding on the surety herein, Defendant USF & G. The performance bonds for both contracts are identical as to terms. The applicable provision in each bond is as follows:

"NOW, THEREFORE, if the Principal shall perform and fulfill all the undertakings, covenants, terms, conditions and agreements of said contract during the original term of said contract and any extensions thereof that may be granted by the Government, with or without notice to the Surety (ies), and during the life of any guaranty required under the contract, and shall also perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the

Surety(ies) being hereby waived, then the above obligation shall be void and of no effect."

In effect, each bond provides that if the Defendant Powers should fail to perform and fulfill all the undertakings, covenants, terms, conditions and agreements of the Government contracts, then the Defendant USF & G as surety would be liable, not to exceed the amount of the bond. In cases involving collections under the Walsh-Healey Public Contracts Act arising out of the failure by a Government contractor to pay the minimum or overtime compensation required by the Act, it has been held that performance bonds such as the ones involved here render the surety on such bonds liable to the United States. United States v. Hudgins–Dize Co., 83 F. Supp. 593 (E.D.Va.1949); United States v. Continental Casualty Co., 85 F.Supp. 573 (E.D.Pa.1949), aff'd per curiam 182 F.2d 941 (Third Cir. 1950). The performance bonds of United States Fidelity and Guarantee Company in United States v. Hudgins-Dize Co., supra, contained the condition that "the principal shall well and truly perform and fulfill all of the undertakings, covenants, terms, conditions, and agreements of said contract." In holding the surety liable for underpayments determined by the Hearing Examiner and affirmed by the Administrator, the court in United States v. Hudgins-Dize Co., supra, 83 F. Supp. at 596 and 597, stated:

"* * * the bonds were here given for the faithful performance of the covenants of the instant contracts; one of those covenants was obedience to stipulations prescribed in the Walsh-Healey Act; and the bonds must therefore necessarily answer for violations of such stipulations."

"But a reason is clearly present for holding the sureties to the administrative determination. The terms of the

2. The United States Supreme Court in Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) held that interest was not recoverable in employee wage actions in which liquidated or double damages were prescribed.

contracts, as well as of the Act, are a part of the bonds. Thereby the sureties agree to treat breaches of the stipulations as violations defined in the statute, to abide the procedural methods set up by the Act, and, as well, to accord the Secretary's conclusions the effect given them by the Act."

The Court concludes that the administrative determination was as binding upon the Defendant surety as it was against the Defendant principal and that judgment herein should be entered against both the principal and the surety.

The defense of Defendant USF & G that the administrative determination is not binding upon it since it was not a party to such proceeding and had no actual notice thereof is without merit. There is nothing in the McNamara-O'Hara Service Contract Act of 1965, the Rules of Practice for Administrative Proceedings Enforcing the Act,[3] the contracts or performance bonds that require these to be done. In any event, the administrative determination, if supported by the preponderance of the evidence, is binding upon the Court, the contractor and its surety.

The Court finds and concludes that the findings of fact of the Hearing Examiner are supported by the preponderance of the evidence before him as disclosed by the record presented to the Court and that the conclusions of law and decision (Order) of the Hearing Examiner, as affirmed by the Administrator, are correct as a matter of law. Therefore, Plaintiff's Motion for Summary Judgment against both Defendants is granted.

3. The Rules of Practice governing administrative proceedings under the Walsh-Healey Public Contracts Act require a copy of the Complaint and notice of hearing to be served upon a surety al-

though the surety is not a party to such proceeding. The Rules of Practice governing administrative proceedings under the McNamara-O'Hara Service Contract Act contain no such provision.