**Ray MARSHALL, Secretary of Labor**

v.

**PRESIDIO VALLEY FARMS, INC.,
and Bill J. Bishop.**

No. P–78–CA–17.

United States District Court,
W. D. Texas,
Pecos Division.

April 30, 1981.

Allen Reid Tilson, U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

B. Buck Pettitt, Jones & Lewis, McAllen, Tex., Steven Karalekas, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

BUNTON, District Judge.

This action arose out of a suit brought by the Secretary of Labor for an alleged violation of the Fair Labor Standards Act of 1938 (F.L.S.A.) as amended 29 U.S.C. § 217 (1961). The Defendants were Presidio Valley Farms, Inc., a Texas corporation owned 50% by Griffin & Brand of McAllen, Inc. and 50% by Bill Bishop and his family, and Bill Bishop individually.

The suit sought to recover wages for farm workers who were employed by the Defendants in years 1975, 1976 and 1977 near Presidio, Texas. In 1975, Bill Bishop, on his own behalf and for the corporation (Presidio Valley Farms, Inc.), employed persons to plant, cultivate, grow and harvest agricultural crops for shipment in interstate commerce. Crops produced by Defendants and their employees during the years 1975–1977 included onions, cantaloupes, peppers and cotton. Production of such crops is a labor-intensive activity.

Several hundred farm workers worked on farmlands belonging to or leased by the Defendants. Defendants claim that most of the laborers hired were not their employees because such persons were hired by crew leaders who were independent contractors.

The facts reveal that during the years involved Edwardo "Lalo" Garcia and Alfonso "Pancho" Melendez were two of Defendants' crew leaders. The crews of these two individuals were mostly composed of persons living across the Rio Grande in Ojinaga, Chihuahua, Mexico. It is undisputed that the persons working under these two crew leaders received less than the minimum wage from May 19, 1975 until June, 1977. At this time, H–2 permits were issued allowing the importation of temporary workers from Mexico to help in the fields. After June, 1977, workers who crossed with permits were compensated with wages which met the minimum wage standard then in effect.

In the years 1976 and 1977, Garcia was registered as a Farm Labor Contractor pursuant to the Farm Labor Contractors Act. 7 U.S.C. § 2041 et seq. (Supp. 1980). Melendez was registered as a Farm Labor Contractor in the years 1975–1977. The unresolved issue in this case is: who employed the farm laborers, and who is responsible for their wages, the Defendants or the crew leaders? The Defendants maintain that the laborers were the employees of Garcia and Melendez, who, they claim, were independent contractors; the Secretary of Labor claims the laborers were the employees of the Defendants. No one disputes that Garcia and Melendez were full-time employees of the Defendants.

■ Registration of Garcia and Melendez as Farm Labor Contractors does not insulate Defendants from the terms of the F.L.S.A. because the evidence shows that the two men were not middle-men providing labor for the Defendants, but they were in reality Defendants' employees. Defendants suggest that the Farm Labor Contractors Act be interpreted so that persons working for someone registered under such Act are never, as a matter of law, employees of the farmer on whose land they work. This interpretation would permit wholesale evasion of the requirements of the F.L.S.A. Nothing in the Farm Labor Contractors Act suggests that this Court must apply that Act to the exclusion of the F.L.S.A.

Garcia and Melendez did exercise some control over the working conditions of workers in their crews, but they exercised no more control than a foreman would. As a matter of economic reality, the farm laborers were in truth and fact Defendants' employees. The two crew leaders were independent contractors in name only: (1) they provided workers *only* for Defendants' fields, (2) they did not transport or house the workers from Mexico, (3) they did not operate with recognizable crews in that persons desiring work would appear at a designated place and be hired, which resulted in a variation of numbers in a crew and (4) while they may have given orders to the various crew members, they allowed Defendant Bishop to exercise control over which fields the crew members would work on a given day. Most of the conditions of the workers' employment were dictated by the economic realities of running a farm and had nothing to do with any independent control allegedly exercised by Garcia and Melendez. *See Hodgson v. Griffin and Brand of McAllen, Inc.*, 471 F.2d 235 (5th Cir.), *cert. denied* 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973); *Mitchell v. John R. Cowley & Bro., Inc.*, 292 F.2d 105 (5th Cir. 1961); *Fahs v. Tree-Gold Co-Op Growers of Florida, Inc.*, 166 F.2d 40 (5th Cir. 1948).

Calling a foreman a "crew leader" or "Farm Labor Contractor" does not make him an independent contractor for purposes of the F.L.S.A. *See Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297, 302 (5th Cir. 1975). Our law has hopefully progressed beyond Humpty Dumpty's pronouncement in Lewis Carroll's "Through the Looking Glass": "When I use a word—it means just what I choose it to mean—neither more nor less."

Defendant Bishop was aware of the provisions of the Fair Labor Standards Act in 1975 as was Presidio Valley Farms in 1976 and 1977. Griffin and Brand of McAllen, Inc., a 50% owner of Presidio Valley Farms, had previously litigated the status of crew leaders under the Fair Labor Standards Act. *See Hodgson v. Griffin and Brand of McAllen, Inc., supra.* Even so, the Defendants failed to keep accurate records of the wages and hours of persons working in the crews of Garcia and Melendez. Records showing that persons in those crews were paid the minimum wage during the period from May, 1975 to June, 1977 were deliberately falsified.

The Court can only conclude that the failure to pay the workers the minimum wage was willful. The Defendants attempted to evade the wage laws by using crew leaders who were registered as Farm Labor Contractors and by calling them independent contractors.

Defendants do not contend, nor could they in good faith, that they were not employers engaged in production of goods for commerce within the meaning of the F.L.S.A. Under the Act, the employees were required to be paid the minimum wage in the years in question. The applicable minimum wage for 1975 was $1.80 an hour, $2.00 for 1976, and $2.20 for 1977.

The failure to pay the minimum wage to identified and unidentified workers in Garcia's and Melendez' crews from the period May 19, 1975 until June, 1977 (when the H–2 permits were issued) resulted in a violation of §§ 206 and 215(a)(2) of the F.L.S.A.

■ Attached is Exhibit A, which sets out the number of underpaid employees, their wage rates, and the hours they worked per week. These figures cannot be

exact, but once the Secretary of Labor proves that Defendants' employees performed work for which they were not properly compensated, then a damage award, even though approximate, becomes appropriate. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *Mitchell v. Mitchell Truck Line, Inc.*, 286 F.2d 721 (5th Cir. 1961).

Attached also is Exhibit B, which sets out the amount Defendants underpaid their employees for the period May 19, 1975 through June, 1977, and for the total three-year period. This amount is arrived at by computing the difference between wages earned, as shown by Exhibit A, and the minimum wage of $1.80 per hour in 1975, $2.00 per hour in 1976, and $2.20 per hour in 1977. Testimony live and by deposition from both employees and the compliance officer of the Secretary of Labor as modified by evidence offered by the Defendants established the damages suffered by both the identified and the unidentified employees as reflected in Exhibits A and B. *See Brennan v. Partida*, 492 F.2d 707 (5th Cir. 1974); *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825 (5th Cir. 1973); *Hodgson v. Ricky Fashions, Inc.*, 434 F.2d 1261 (5th Cir. 1970).

▆▆▆ The willful violation of §§ 211(c) and 215(a)(5) of the F.L.S.A. results in a three-year rather than a two-year statute of limitations. *See Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974); *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1972). As the Defendants consciously attempted to avoid paying the minimum wage by characterizing employees Lalo Garcia and Pancho Melendez as independent contractors, such actions having heretofore been characterized as willful, and because of the prior litigation previously cited between the Secretary of Labor and the owner of 50% of the stock of Presidio Valley Farms, Inc., a permanent injunction is issued to enjoin further violations of §§ 215(a)(2) and 215(a)(5) of the F.L.S.A. An injunction is appropriate in this case even though Defendants were apparently complying with the F.L.S.A. at the time of trial. *See Dunlop v. Davis*, 524 F.2d 1278 (5th Cir. 1975).

Defendants shall cease withholding payment of the minimum wages due their employees.

IT IS FURTHER ORDERED that Defendant Bishop shall pay to the Secretary of Labor the sum of $13,648.00 plus 9% prejudgment interest running from January 1, 1976. Defendant Presidio Valley Farms, Inc. shall pay to the Secretary of Labor the sum of $71,600.00 plus 9% prejudgment interest or $55,280.00 running from January 1, 1977, and 9% prejudgment interest on $16,320.00 running from January 1, 1978. *See Usery v. Associated Drugs, Inc.*, 538 F.2d 1191 (5th Cir. 1976). The Secretary of Labor shall deliver the sums owed them to those employees identified either through their testimony at trial or by the depositions admitted into evidence at trial. *See Hodgson v. Frisch Dixie, Inc.*, 469 F.2d 82 (6th Cir. 1972). Furthermore, the Secretary of Labor has a legal and moral obligation to identify (through examination of Defendants' records and otherwise) the heretofore unidentified employees and deliver the back wages owing them. *Accord Leviticus 19:13.*[1]

IT IS SO ORDERED.

## EXHIBIT A

### 1975

| WORK | WAGE RATE | WKS. | DAYS/WK. | HRS/DAY | NO. OF EMPLOYEES |
|---|---|---|---|---|---|
| Onion Harvest | $.17/basket; 6 bask./hr. | 4 | 5 | 8 | 60 |
| Weed & Turn Melon Vine | $.70/hr. | 2 | 5 | 8 | 50 |
| Melon Harvest | $.70/hr. | 2 | 4 | 4 | 50 |

1. *Leviticus, 19:13* reads "Thou shalt not defraud thy neighbour, neither rob him: the wages of him that is hired shall not abide thee all night until the morning."

## 1976

| WORK | WAGE RATE | WKS. | DAYS/WK. | HRS/DAY | NO. OF EMPLOYEES |
|------|-----------|------|----------|---------|------------------|
| Onion Transplant | $4/row; 3 rows/day | 4 | 5 | 8 | 60 |
| Weed Onion | $1/hr. | 2 | 5 | 8 | 50 |
| Weed & Turn Melon Vine | $1/hr. | 2 | 5 | 8 | 50 |
| Onion Harvest | $.20/basket; 6 bask./hr. | 4 | 5 | 8 | 60 |
| Melon Harvest | $1/hr. | 4 | 7 | 8 | 100 |
| Weed Pepper | $1/hr. | 2 | 5 | 8 | 50 |
| Pepper Harvest | $1/hr. | 3 | 5 | 8 | 70 |

## 1977

| WORK | WAGE RATE | WKS. | DAYS/WK. | HRS/DAY | NO. OF EMPLOYEES |
|------|-----------|------|----------|---------|------------------|
| Onion Transplant | $4/row; 3 rows/day | 4 | 5 | 8 | 60 |
| Weed Onion | $1/hr. | 2 | 5 | 8 | 50 |
| Weed & Turn Melon Vine | $1/hr. | 2 | 5 | 8 | 50 |

### EXHIBIT B
### BACK WAGES OWING

#### 1975

| | |
|---|---|
| Onion Harvest | $7,488.00 |
| Weed & Turn Melon Vine | $4,400.00 |
| Melon Harvest | $1,760.00 |
| | $13,648.00 Total, 1975 |

#### 1976

| | |
|---|---|
| Onion Transplant: | $4,800.00 |
| Weed Onion | $4,000.00 |
| Onion Harvest | $7,680.00 |
| Weed & Turn Melon Vine | $4,000.00 |
| Melon Harvest | $22,400.00 |
| Weed Pepper | $4,000.00 |
| Pepper Harvest | $8,400.00 |
| | $55,280.00 Total, 1976 |

#### 1977

| | |
|---|---|
| Onion Transplant | $6,720.00 |
| Weed Onion | $4,800.00 |
| Weed & Turn Melon Vine | $4,800.00 |
| | $16,320.00 Total, 1977 |

#### 3 YEAR TOTAL

| | |
|---|---|
| $13,648.00 | 1975 |
| $55,280.00 | 1976 |
| $16,320.00 | 1977 |
| $85,248.00 | |