**AMERICAN WASTE REMOVAL COMPANY, a corporation, and Joseph B. Jarvies, individually and as President of American Waste Removal Company, Plaintiffs-Appellants,**

v.

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, and Employee Defendants, Defendants-Appellees.**

No. 83–2555.

United States Court of Appeals, Tenth Circuit.

Nov. 23, 1984.

Sigmund L. Bloom, Albuquerque, N.M. (James Rawley, Albuquerque, N.M., with him on brief), for plaintiffs-appellants.

Patricia M. Duryee, Washington, D.C. (Francis X. Lilly, Sol. of Labor; Joseph M. Woodward Acting Associate Sol.; and Linda Jan S. Pack, Atty., U.S. Dept. of Labor, Washington, D.C., Counsel for Appellate Litigation, with her on brief), for defendants-appellees.

Before SEYMOUR, BREITENSTEIN and McWILLIAMS, Circuit Judges.

SEYMOUR, Circuit Judge.

Plaintiffs American Waste Removal Company and its president Joseph Jarvies (hereinafter referred to collectively as "American Waste") brought an action in district court seeking review of the decision of the Administrator of the Wage and Hours Division, Employment Standards Administration, United States Department of Labor. The Administrator had affirmed the decision of the administrative law judge holding that American Waste violated the minimum wage and fringe benefit provisions of the McNamara O'Hara Service Contract Act, 41 U.S.C. § 351, *et seq.* (1982). In the district court, the Secretary of Labor counterclaimed under *id.* § 354(b), seeking recovery of the minimum wages and fringe benefits found to be due, plus interest. The district court held that the ALJ's findings of fact were supported by a preponderance of the evidence and granted summary judgment in favor of the Secretary. We affirm.

I.

In June 1975 the Air Force awarded American Waste a contract for the removal of refuse from Kirtland Air Force Base in Albuquerque, New Mexico. The contract was initially for one year and was extended for an additional six-month period. The amount of the contract was $127,575.00, and American Waste's bid was approximately $50,000 lower than the next lowest bid. Because the contract amount exceeded $2,500.00, the Service Contract Act was applicable. *See id.* § 351(a). The Act requires the payment of minimum wage and fringe benefits to employees working under contracts providing services to the United States. After an investigation by the Wage and Hour Division of the Department of Labor, the Regional Solicitor filed a complaint against American Waste in December 1978, alleging that American Waste failed to pay the required minimum wages or fringe benefits and failed to make and keep adequate records of employees' wages and hours as required by 29 C.F.R. § 4.6(g).

At a hearing in March 1979, the ALJ heard the testimony of ten witnesses, eight of whom were called by the Government and two of whom were called by American Waste. The Government's witnesses included the Air Force contract administrator, the Secretary's compliance officer, and six former employees of American Waste. American Waste called Jarvies' brother-in-law and the chief of Contract Construction Management at Kirtland Air Force Base.

The ALJ also received into evidence the pay records and employee time sheets kept by American Waste, and the pay check stubs of the employees. The six former employees testified about the hours they worked each day, where and when they worked, and the salary or hourly wage they received. They also testified about whom they worked with, and each employee testified about the fringe benefits which he did or did not receive.

Because of an absence of complete and accurate pay records kept by American Waste, the compliance officer testified about his reconstruction of the hours worked by all employees on the Kirtland contract. This reconstruction was based on interviews with employees, the testimony of the witnesses, and the hours recorded in materials provided by American Waste. The Secretary also submitted a summary of unpaid wages, which was supported by wage transcription and computation sheets for individual employees.

The former employees also testified about undocumented alien laborers American Waste employed to assist on the Kirtland contract. The employees were unable to identify these undocumented workers by name, but testified that two such undocumented employees were on the job almost every day. In addition, the Secretary submitted signed statements of two undocumented employees who had been arrested while riding in Jarvies' truck on the base. These statements included descriptions of the undocumented employees' working hours and pay rates, which were corroborated by the testimony of one of the former employees who testified. These undocumented workers were deported by the Immigration and Naturalization Service after their statements were taken.

American Waste introduced payroll records and the testimony of the chief of Contract Construction Management at Kirtland to rebut the government's evidence concerning the hours worked by American Waste's employees. No evidence was introduced to rebut the government's claim that two undocumented illegal aliens had been employed.

The ALJ thoroughly analyzed all the evidence and upheld the back wage claims for the six testifying employees, with some modifications. He dismissed the claims for three non-testifying employees because of insufficient evidence and upheld the claims for three other nontestifying employees. He also upheld a back wage award for the unnamed, undocumented workers based on the unrefuted evidence that American Waste had regularly employed two such workers over the period of time encompassing the Service Contract Act violations alleged by the Secretary.

The ALJ concluded that American Waste had violated the Service Contract Act and the applicable regulations and found American Waste liable for the underpayments of wages and fringe benefits in the amount of $33,601.85, plus interest. The ALJ also ordered that monies not paid to former employees within three years of the date of the order were to be paid into the Treasury of the United States as miscellaneous receipts. On appeal, American Waste contends that (1) the ALJ's findings are not supported by a preponderance of the evidence, and (2) the Service Contract Act does not authorize an award of wages and benefits to the unnamed, undocumented employees.

## II.

■ American Waste first argues that the district court erred in granting summary judgment in favor of the Secretary because a genuine dispute of fact exists as to whether the ALJ's findings are supported by a preponderance of the evidence. This argument misconceives the nature and purpose of judicial review by the district court. Plaintiffs seeking judicial review of the ALJ's decision are not entitled to a trial *de novo* on factual issues such as credibility or testimonial inconsistencies. The district court's scope of review is limited to the legal question whether the ALJ applied and satisfied the standard of proof required to find a violation of the Service Contract Act. The findings of fact made by an ALJ in proceedings pursuant to the Service Con-

tract Act are conclusive in any court of the United States if supported by a preponderance of the evidence. *See* 41 U.S.C. §§ 39, 353(a); *Midwest Maintenance & Construction Co. v. Vela*, 621 F.2d 1046, 1048 (10th Cir.1980); *Harp v. United States*, 173 F.2d 761, 762 (10th Cir.), *cert. denied*, 338 U.S. 816, 70 S.Ct. 56, 94 L.Ed. 494 (1949); *United States v. Powers Building Maintenance Co.*, 336 F.Supp. 819, 822 (W.D.Okla. 1972).

■ The ALJ, after an extensive and thorough review of all the evidence, calculated back wages and benefits in accordance with the standard first set down in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Under this standard:

"The employee bears the burden of proving he performed work for which he was not properly compensated. However, employers have a duty to keep accurate records. If employers do not keep accurate records the employee's burden is extremely difficult. In order to prevent the employee from being penalized by the employer's failure to keep adequate records, the Supreme Court held in *Anderson* that an employee carries his burden by proving that he has 'in fact performed work for which he was improperly compensated and ... [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.' Upon such a showing, the burden shifts to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference drawn from the employee's evidence. If the employer does not rebut the employee's evidence, then damages may be awarded even though the result is only approximate. The employer cannot complain that the damages lack the

precision that would have been possible if the employer had kept the records required by law."

*Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 85–86 (10th Cir.1983) (citations omitted) (*quoting Anderson*, 328 U.S. at 687, 66 S.Ct. at 1192). We have consistently upheld back wage awards based on reasonable approximations made in the absence of employer records.[1] *See, e.g., Donovan v. United Video, Inc.*, 725 F.2d 577, 584 (10th Cir.1984); *Donovan v. Williams Oil Co.*, 717 F.2d 503, 505–06 (10th Cir.1983); *Hodgson v. Humphries*, 454 F.2d 1279, 1282–83 (10th Cir.1972); *Bledsoe v. Wirtz*, 384 F.2d 767, 771 (10th Cir.1967).

■ Here, the Secretary produced six former employees who testified extensively and in detail about their working conditions, hours, and pay rates.[2] This testimony was supported by that of the compliance officer and by substantial documentary evidence. In addition, the testimony of the former employees and the compliance officer, as well as the statements of the two deported employees, established that two unidentified undocumented workers were regularly employed by American Waste on the Kirtland contract. This evidence sufficiently established a pattern of Service Contract Act violations, thereby causing the burden to shift to American Waste. *See Donovan v. Simmons Petroleum Corp.*, 725 F.2d at 86. Our review of the record indicates that the ALJ and the district court properly concluded that American Waste failed to carry the burden of rebutting the Secretary's prima facie case. The ALJ's computations of hours, wages, and benefits for identified and unidentified employees are supported by a preponderance of the evidence as required by the Act, and the approximation of damages is reasonable. *See Anderson*, 328 U.S. at

---

**1.** While these were back wage awards under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (1982), the logic and reasoning underlying the *Anderson* standard is equally applicable to awards under the Service Contract Act, 41 U.S.C. § 351 *et seq.* (1982). *See* note 3, *infra; United States v. Powers Building Maintenance Co.*, 336 F.Supp. 819, 822 (W.D.Okla.1972).

**2.** Not all injured employees need testify in order to establish a prima facie case as a matter of just and reasonable inference. *Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83, 86 (10th Cir.1983).

687–88, 66 S.Ct. at 1192–93; *Donovan v. United Video, Inc.,* 725 F.2d at 584; *Hodgson,* 454 F.2d at 1283.

### III.

▐ American Waste also claims that the award of back wages and benefits for the unnamed, unlocated employees is a penalty or fine not authorized by the Service Contract Act. We disagree. The primary purpose of the Service Contract Act is to protect all employees of contractors and subcontractors furnishing services to federal agencies. *See* S.Rep. No. 798, 89th Cong., 1st Sess., *reprinted in* 1965 U.S. Code Cong. & Ad. News 3737; H.R.Rep. No. 948, 89th Cong., 1st Sess. (1965). The Act is also intended to protect service contract competitors from unfair competition by employers paying subminimum wages. *See id.* at 3739. In interpreting the Act, we construe its provisions liberally to accomplish these remedial purposes. *Midwest Maintenance & Construction Co.,* 621 F.2d at 1050.

Section 354(b) authorizes the Secretary to bring legal action to recover back wages for "all service employees" who work on a contract covered by the Service Contract Act, and also provides that:

> "Any [recovered] sum not paid to an employee because of inability to do so within three years shall be covered into the Treasury of the United States as miscellaneous receipts."

Section 354(b) does not exclude unnamed or unlocated employees and the Act nowhere distinguishes between known and unknown, or located and unlocated employees.

Moreover, the Service Contract Act has been interpreted by the Secretary to be consistent with other federal wage and hours laws, most notably the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (1982).[3] Damage awards for unidentified employees are within the scope of the FLSA, so long as a preponderance of the evidence establishes the existence, work hours, and wages of these employees. *See, e.g., Marshall v. Presidio Valley Farms, Inc.,* 512 F.Supp. 1195, 1198 (W.D.Tex. 1981); *cf. Marshall v. Hope Garcia Lancarte,* 632 F.2d 1196, 1198–99 (5th Cir. 1980). Under section 216(c) of the FLSA, which is analogous and virtually identical to section 354(b), unclaimed back wages are not returned to an employer who has violated the FLSA but are paid into the United States Treasury as final miscellaneous receipts. *Burk Builders, Inc. v. Wirtz,* 355 F.2d 451, 453 (5th Cir.1966); *Brennan v. Emerald Renovators, Inc.,* 410 F.Supp. 1057, 1061 (S.D.N.Y.1975); *Shultz v. Atlantic Bus Service, Inc.,* 304 F.Supp. 947, 950 (D.C.Z.1969).

This should also be the result in the case of funds recovered by the Secretary under the Service Contract Act for wages and benefits for unnamed or unlocated workers who have not been paid because of the government's inability to locate them. This conclusion is consistent with the congressional purposes of protecting workers and preventing unfair competition on service contracts. Allowing an offending employer to retain back wages and benefits solely because the Secretary cannot name or locate an aggrieved employee would frustrate the purposes of the Service Contract Act, and would reduce an employer's incentive to comply with its spirit and provisions. *Cf. Marshall v. Quik-Trip Corp.,* 672 F.2d 801, 807 (10th Cir.1982) (applying similar reasoning to unclaimed wages under the FLSA). This is particularly so where, as here, the difficulty of identifying and locating the employees is due to the employer's failure to keep records. The award of back wages and benefits for the

---

**3.** For example, in the Service Contract Act regulations, FLSA principles are applied to the determination of hours worked. *See* 29 C.F.R. § 4.178. The regulations also use FLSA standards to determine overtime pay. *See* 29 C.F.R. § 4.181. Finally, the applicable minimum wage provisions of the FLSA govern minimum wages under the Service Contract Act. *See* 41 U.S.C. § 351(b)(1); S.Rep. No. 798 89th Cong., 1st Sess., *reprinted in* 1965 U.S. Code Cong. & Ad. News 3737; H.R.Rep. No. 948, 89th Cong., 1st Sess. (1965); *Masters v. Maryland Management Co.,* 493 F.2d 1329, 1332–33 (4th Cir.1974).

two unnamed and unlocated employees was therefore proper.

Judgment affirmed.