HALIFAX TECHNICAL SERVICES, INC., Plaintiff,

v.

UNITED STATES of America,

and

AlliedSignal Technical Services Corporation, Defendants.

Civ. A. No. 94–185.

United States District Court, District of Columbia.

April 7, 1994.

William W. Goodrich, Jr., Arent Fox Kintner Plotkin & Kahn, Washington, DC, for plaintiff.

Douglas A. Wickham, Civ. Div., Office of U.S. Atty., Washington, DC, for U.S.A.

Frederick W. Claybrook, David Z. Bodenheimer, Crowell & Moring, Washington, DC, for AlliedSignal.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

This disappointed-bidder government contract case is presently before the Court on plaintiff's motion for a preliminary injunction.

Plaintiff Halifax Technical Services, Inc. ("Halifax") seeks to set aside the award of a contract by the U.S. Marine Corps ("USMC") for maintenance of military equipment and supplies loaded aboard prepositioning ships. The value of the contract is approximately $130 million. USMC first awarded the contract to Halifax in October, 1991, after which the General Accounting Office ("GAO") recommended a recompetition based on the USMC's mis-evaluation of cost proposals. Upon the recompetition, the contract was awarded to defendant AlliedSignal Technical Services Corp. ("Allied") in September, 1993. The USMC evaluated Allied at a slightly higher technical rating (weighted 60%) and found that Allied's costs (weighted 40%) were substantially less than Halifax's. Plaintiff's GAO protests, raising

the identical issues being raised here, were denied on January 24, 1994. *Halifax Technical Services, Inc.*, B–246236.9, January 24, 1994, —— CPD ——, 1994 WL 20801 (C.G.). Plaintiff now asks this Court to enjoin the award of the contract to Allied. Transition between contractors in performance of services from Halifax to Allied is due to be accomplished on April 23, 1994.

To be entitled to preliminary injunctive relief, a movant must demonstrate that there is a substantial likelihood of its ultimate success on the merits; that the movant will suffer irreparable harm in the absence of the requested *pendente lite* relief; that the balance of the harms favors injunctive relief; and that the public interest justifies issuance of the injunction. *Washington Metropolitan Area Transit Com. v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977).

 In order to succeed on the merits, Halifax will be required to show that the USMC's award of the contract to Allied was arbitrary and capricious, 5 U.S.C. § 706(2)(A) (1988), or that the procurement procedure involved a clear and prejudicial violation of law. *Kentron Hawaii Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973). Plaintiff argues that the instant award lacked a rational basis because the USMC's cost realism analysis was flawed, and because Allied's bid allegedly would cause it to violate the Service Contract Act, 41 U.S.C. § 351 *et seq.* (1988), ("SCA" or "the Act").

## I.

The contract at issue is a "cost reimbursement" contract, in which the government is bound to pay the contractor its actual and allowable costs regardless of the proposed estimated costs set forth in the bid. The agency is thus required to perform a "cost realism analysis" of an offeror's proposed costs to prevent unrealistically low bids that will lead to cost overruns.

Allied's bid proposed a cap of approximately $61.8 million on direct labor costs, or just under 50% of the total contract value. In other words, Allied's bid proposed to shift the risk of direct labor cost overruns to itself. The USMC conducted two cost realism analyses—one which took into account Allied's cap on labor costs ("capped costs analysis"), and another which compared anticipated costs absent the cap ("uncapped costs analysis"). Both the analyses showed Allied to be the low bidder, by $5.2 million with labor costs capped and by $1.3 million without the cap. The GAO found that Allied's cap on direct labor costs was the basis for its significantly lower proposed costs. GAO Decision at 4. Halifax contends that USMC made a series of errors in its cost realism analyses which, if corrected, would make Halifax the low bidder by just over $1 million with the labor cap and approximately $1.5 million without the cap.[1]

 The Court notes at the outset that decisions on cost realism are squarely within the area of the contracting officer's expertise, and a reviewing court may not substitute its judgment on the matter for the judgment of the contracting officer unless the latter is not supportable on any rational basis. *Kentron Hawaii*, 480 F.2d at 1166. The plaintiff's challenge to USMC's cost analyses at GAO, which generated a 30–volume administrative record, was unsuccessful. The GAO ruled that upward adjustments to capped costs in assessing cost realism are not necessary because the offeror, not the government, bears the risk of cost overruns. An awardee's ability to perform a contract at rates arguably capped below actual cost goes only to the agency's determination of the offeror's responsibility, which is in turn only reviewable upon a showing of agency fraud, bad faith or misapplication of responsibility criteria. GAO Decision at 9. Halifax does not contest Allied's responsibility under the contract. Its only dispute with the GAO opinion is in GAO's failure to address Halifax's specific assertions of miscalculations in the cost realism analysis, implicitly taking issue with the GAO's conclusion that upward adjustments to capped costs are improper.

---

**1.** Most of Halifax's challenges to the cost realism analysis rely on the affidavit of an accountant, James Brown, which is not part of the adminis-trative record, and thus is not properly before this Court. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

■ The Court rejects Halifax's challenge to the GAO's determination. When an offeror has taken upon itself the risk of labor cost overruns, whether it has calculated those costs realistically is relevant only insofar as it remains responsible, i.e., able to perform notwithstanding it may have miscalculated; if it has erred, it will nevertheless be able to bear the negative consequences and still fulfill the contract to the government's satisfaction. The GAO agreed that Allied was a responsible bidder, and that "upward adjustments to capped costs are improper." GAO Decision at 9.

"A court's reluctance to interfere with the executive procurement process should be especially strong where, as here, the General Accounting Office has made a determination upholding the procurement officials on the merits." *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1304 (D.C.Cir.1971). The GAO, an agency with nearly 75 years' history reviewing the government procurement process, is composed of a corps of officials and specialists with expertise born of concentrated experience with applicable statutes, regulations and precedents. Independent of the executive departments engaged in the procurement decisions under review, the GAO is uniquely positioned and qualified to advise agencies and courts on the propriety of contested awards. As the D.C. Circuit recognized in *Wheelabrator Corp. v. Chafee,* 455 F.2d 1306, 1315 (D.C.Cir.1971), "the importance of the GAO has not been undercut by the recognition of a judicial forum for disappointed bidders," that forum itself deriving from the D.C. Circuit's own decision in *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970). Although GAO's opinions are not binding on reviewing courts or the agencies, courts especially have given respectful attention to the GAO's expertise and special competence in procurement matters. *See Wheelabrator,* 455 F.2d at 1315; *Irvin Industries Canada, Ltd. v. United States Air Force,* 924 F.2d 1068, 1077 n. 88 (D.C.Cir.1990). The GAO's altogether sensible conclusion that upward adjustments to capped costs are improper is a sound rule of bid evaluation, and this Court perceives no justification for discarding it, or for second-guessing the GAO's determination that the USMC appropriately evaluated the actual costs to it of the contract at issue and properly awarded the contract to Allied as the low bidder by $5.2 million.

Plaintiff then asserts that the USMC made several errors in its analysis of costs not subject to the cap, which, all totalled, would prove Halifax to be the low bidder by just over $1 million. For example, as a basis of its bid costs Allied assumed that 36 non-unionized positions would agree to join the union. In recognition of the possibility that some or all of the 36 employees might not be willing to forego their non-union status, the USMC upwardly adjusted Allied's uncapped costs analysis by approximately $3.5 million. Halifax argues that this adjustment to Allied's uncapped costs analysis must also be made to Allied's capped costs analysis. But as a direct labor cost, the amount spent on the 36 positions would in any event be covered by the cap. Whether or not the workers agree to join the union, Allied's direct labor costs being capped, the government runs no risk of cost overruns. It was thus entirely reasonable for USMC to leave the capped costs analysis unadjusted with respect to these 36 positions.

Halifax proposes other upward adjustments to Allied's uncapped costs, including overtime labor base and premium, overhead, and general and administrative expenses, which appear to the Court to be meritless. However, having rejected the notion of an adjustment premised·on doubt as to the unionization of the 36 positions, even if the Court were to accept all of Halifax's other proposed upward adjustments, Allied would still be the low bidder by $2.3 million in the capped costs analysis. And, because the Court upholds the validity of the USMC's treatment of the cap on direct labor costs, it is unnecessary to examine Halifax's contention that it is the low bidder under the uncapped costs analysis.

## II.

Halifax next urges that Allied's bid was illegal, and the contract award therefore invalid, because Allied's cap on direct labor costs will violate the Service Contract Act

during the first year of performance. The SCA prohibits a successor contractor from paying

> any service employee under the contract less than the wages and benefits, and any prospective increases in wages and fringe benefits provided for in a collective-bargaining agreement as a result of arm's-length negotiations, to which such employees would have been entitled if they were employed under the predecessor contract.

41 U.S.C. § 353(c) (1988). Allied's proposal contemplates that the salary increase due on May 21, 1994, which is a term of Halifax's collective bargaining agreement, will not have to be paid, and that the increases due on May 21, 1995 will be distributed in lump sum form on May 21, 1996, at the expiration of the collective bargaining agreement, rather than in 1995. Halifax argues that failure to pay the 1994 scheduled salary increase in the first year of the contract will violate the SCA and that the award therefore is invalid.

■ There is some doubt as to whether a disappointed bidder has standing to assert a violation of the SCA by a competitor as grounds to set aside a contract award. The primary purpose of the Act is to provide wage and benefit protection to employees of federal contractors. S.Rep. No. 798, 89th Cong., 1st Sess. 1 (1965), *reprinted in* 1965 U.S.C.C.A.N. 3737. In a similar case, *Pan Am World Services v. United States*, 34 Cont.Cas.Fed. (CCH) (D.D.C.1987), another judge of this district court held that a disappointed bidder did not have standing to assert injuries from the successful bidder's alleged violations of the SCA because plaintiff was outside the zone of interest Congress meant to protect. At least one circuit has, however, stated that the SCA was also intended to prevent contract competitors from engaging in wage-busting competition, *see American Waste Removal Co. v. Donovan*, 748 F.2d 1406, 1410 (10th Cir.1984), and plaintiff cites dicta from a 1973 D.C. Circuit case for the proposition that it has standing

to assert SCA violations. *Kentron Hawaii, supra*, at 1173.

■ Assuming without deciding that Halifax does have standing to raise alleged violations of the SCA in challenging the award of the contract to Allied, the Court now turns to the issue of whether a potential violation of the SCA reflected in a proposal renders the proposal illegal, invalidating the contract formed by its acceptance. Regulations promulgated by the Secretary of Labor interpret section 4(c) of the Service Contract Act to prevent a successor contractor from relying on its own separate collective bargaining agreement to pay union members less in the way of wages and fringe benefits than its predecessor's collective bargaining agreement called for. 29 C.F.R. § 4.163(d) (1993).[2] Under the regulations, then, it appears that if Allied does not grant the May 21, 1994 raise called for in Halifax's collective bargaining agreement, Allied might be in violation of the SCA. *See Vigilantes, Inc. v. Administrator of Wage and Hour Div., U.S. Dept. of Labor*, 968 F.2d 1412 (1st Cir.1992) (wage rate in predecessor contractor's collective bargaining agreement was binding upon successor contractor proposing to pay minimum wage rate where minimum wage rate was lower than collective bargaining wage rate). Halifax complains that because Allied premised its bid—more specifically, its cap on direct labor costs—on an anticipatory violation of the Act, Halifax was prejudiced by premising the labor costs in its own bid on its collective bargaining agreement wage rate. But the issue before the Court is whether the USMC acted arbitrarily and capriciously or in clear violation of the law in accepting Allied's bid. The possibility that Allied's bid might eventually cause it to run afoul of another statute at sometime during its performance of the contract does not render the bid void.

The Court finds that the USMC did not act arbitrarily or in conscious disregard of the SCA. Before making his decision the USMC's contracting officer prudently sought

---

**2.** "The fact that a successor contractor may have its own collective bargaining agreement does not negate the clear mandate of the statute that the wages and fringe benefits called for by the prede-

cessor contractor's collective bargaining agreement shall be the minimum payable under a new (successor) contract ..." 29 C.F.R. § 4.163(d).

 

and received a legal opinion from the Department of Labor's Wage and Hour Division, the agency charged with primary responsibility for interpretation and enforcement of the SCA, that Allied's bid would not violate the Act. Whether or not the Department of Labor is correct, the USMC had before it authoritative advice on the legality of the agreement from a most appropriate source; it was under no obligation to reject that advice as inherently unreliable.[3]

Finally, the Court observes that Allied's cap on labor costs is not contingent on union approval or its compliance with the SCA. If the union fails to approve a renegotiation of the collective bargaining agreement, or if Allied is hereafter held to be in violation of the Service Contract Act, Allied itself will be obliged to absorb any pay increase required. *See District 2, Marine Engineers Beneficial Ass'n v. Military Sealift Command, Dep't of Navy*, 26·Wage & Hour Cas. (BNA) 723, 89 Lab.Cas. ¶ 33,925 (D.D.C.1980) (citing *Serv-Air, Inc. v. Seamans*, 473 F.2d 158 (D.C.Cir. 1972)). There is no risk of increased cost to the government. Moreover, the prospect that any violation of the Service Contract Act will ever occur is entirely speculative at the moment, and the possibility that a successful bidder may engage in wrongful conduct in the future is insufficient to invalidate a contract award. *cf. Kentron Hawaii*, 480 F.2d at 1173.

Because Halifax's likelihood of success on the merits appears negligible, and because both the USMC and Allied would suffer substantial harm if performance of the contract were stayed little less than a month before the final transition is to occur, the Court holds that an injunction against performance of the contract is not warranted.

For the foregoing reasons, it is, this 7th day of April, 1994,

ORDERED, that plaintiff's motion for a preliminary injunction is denied; and it is

FURTHER ORDERED, that plaintiff show cause within sixty (60) days why final judgment should not be given for defendants on the merits in accordance with the foregoing unless a timely appeal herefrom remains pending.

---

**3.** Significantly, for this Court's purposes, the GAO, too, gave full consideration to this very issue and ruled that the USMC's acceptance of the cap on labor costs, including its reliance on the Department of Labor's informal opinion, was reasonable. GAO Decision at 12–13.